IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTH SLOPE BOROUGH and ALASKA ESKIMO WHALING COMMISSION,<br><br>      Plaintiffs,<br><br>vs.<br><br>MINERALS MANAGEMENT SERVICE; REJANE 'JOHNNIE' BURTON, in her official capacity as Director, Minerals Management Service; UNITED STATES DEPARTMENT OF THE INTERIOR; and DIRK KEMPTHORNE, in his official capacity as Secretary, United States Department of the Interior,<br><br>      Defendants. | Case No. 3:07-cv-0045-RRB<br><br><br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Before the Court are Plaintiffs North Slope Borough ("NSB") and the Alaska Eskimo Whaling Commission ("AEWC") (collectively "Plaintiffs") with a Motion for Preliminary Injunction in which Plaintiffs seek to enjoin the sale by the

ORDER DENYING MOTION FOR
   PRELIMINARY INJUNCTION - 1
3:07-CV-0045-RRB

United States of America of certain oil and gas leases located in the Beaufort Sea and referred to more specifically as Oil and Gas Lease Sale 202.[1] The sale is scheduled to occur on April 18, 2002.

Defendants Minerals Management Service ("MMS"), MMS Director Rejane "Johnnie" Burton, in her official capacity, United States Department of Interior ("DOI"), and DOI Secretary Dirk Kempthorne, in his official capacity (collectively "Defendants"), oppose at Docket 19.

The Court has read and considered Plaintiffs' Motion for Preliminary Injunction, Defendants' Opposition, Plaintiffs' Reply, the 2003 multi-site environmental impact statement ("EIS") and the Lease Sale 202 Environmental Assessment ("EA"). The Court heard the oral arguments of counsel on April 11, 2007.

## II. BACKGROUND

In 2003, MMS prepared a four-volume EIS to analyze the impacts of three proposed lease sales in the Beaufort Sea which were scheduled to occur in 2003 (Lease Sale 186), 2005 (Lease Sale 195), and 2007 (Lease Sale 202). Lease Sales 186 and 195 occurred as scheduled with 34 and 117 leases sold respectively in each sale. Significantly, no blocks are being offered in Lease Sale 202 that were not previously offered in Lease Sales 186 or 195.

---

[1] Docket 8.

Because of the time lag between the 2003 EIS and the later lease sales, MMS planned to prepare an EA for Lease Sales 195 and 202 to determine whether new information or circumstances arising since the 2003 EIS would require a SEIS. On October 28, 2005, MMS published a public notice of intent to prepare an EA for proposed Lease Sale 202. The notice provided a public 30-day comment period. Plaintiff AEWC submitted comments to MMS in response to the notice. In August 2006, the agency completed an EA for Lease Sale 202.

On September 6, 2006, MMS published a public notice in the Federal Register that it had prepared an EA and a Finding of No New Significant Impacts ("FONNSI") for proposed Lease Sale 202. The notice provided a period of 30-day comment period for interested parties to submit comments on the EA and FONNSI. Comments by Plaintiffs AEWC and NSB highlighted concerns about unprecedented industry interest in the Beaufort Sea, unrealistic single-field development scenarios for Lease Sale 202, impacts from seismic testing, and potentially significant cumulative impacts from seismic testing and climate change on subsistence and polar bears. In October 2006, MMS published a Proposed Notice of Lease Sale for Lease Sale 202, setting the bid opening for March 28, 2007. Subsequently, the date was rescheduled for April 18, 2007.

In early 2007, Plaintiffs filed a Complaint seeking to overturn the MMS's decision not to supplement the 2003 EIS on the grounds that it was arbitrary and capricious and in violation of the National Environmental Policy Act ("NEPA").[2] Plaintiffs filed the underlying Motion for Preliminary Injunction to enjoin Lease Sale 202.

## III. LEGAL STANDARDS

### A. Preliminary Injunction

In order to obtain a preliminary injunction Plaintiffs must demonstrate either: (1) a likelihood of success on the merits and a possibility of irreparable injury; or (2) the existence of serious questions on the merits and a balance of hardships tipping in their favor.[3] "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."[4] Where the public interest is implicated, the court must determine whether the public interest favors the moving party.[5]

---

[2] 42 U.S.C. § 4231 et. seq.

[3] Earth Island Inst. v. United States Forest Serv., 351 F.3d 1291, 1297-98 (9th Cir. 2003).

[4] Id. at 1298 (citation omitted).

[5] Westlands Water Dist. v. Natural Res. Def. Council, 43 F.3d 457, 459 (9th Cir. 1994).

ORDER DENYING MOTION FOR
  PRELIMINARY INJUNCTION - 4
3:07-CV-0045-RRB

The Court has discretion to deny a request for a preliminary injunction, however the Court "necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact."[6]

**B.  NEPA**

To determine whether the Plaintiffs are likely to succeed on the merits of their claim, the Court must determine whether MMS fulfilled its obligations under NEPA which mandates the preparation of an EIS for any major federal action "significantly affecting the quality of the human environment."[7]

The twin objectives of NEPA are to (1) require the federal agency to "consider every significant aspect of the environmental impact of a proposed action," and to (2) ensure that the agency "inform[s] the public that it has indeed considered environmental concerns in its decisionmaking process."[8] The agency, however, is not required to elevate environmental concerns over other appropriate considerations.[9]

A threshold question in a NEPA case therefore is whether a proposed project will "significantly affect" the environment,

---

[6]  Earth Island Inst., 351 F.3d at 1298 (citation omitted).

[7]  42 U.S.C. § 4332(C).

[8]  Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 97 (1983)(internal citations omitted).

[9]  Id.

ORDER DENYING MOTION FOR
   PRELIMINARY INJUNCTION - 5
3:07-CV-0045-RRB

thereby triggering the requirement for an EIS.[10]  An agency may prepare an environmental assessment ("EA") to determine whether the environmental impact of a proposed action is significant enough to warrant preparation of an EIS.[11]  If the agency determines that an EIS is not necessary, it will issue a Finding of No Significant Impact ("FONSI").[12]  "Because the very important decision whether to prepare an EIS is based solely on the EA, the EA is fundamental to the decision-making process."[13]

Where, as in this case, an agency has previously prepared an EIS, it may prepare an EA to determine whether new information or circumstances not originally accounted for in the EIS require preparation of an updated EIS.  "The new circumstance must present a seriously different picture of the environmental impact of the proposed project from what was previously envisioned."[14]  Based upon the EA, the agency may prepare a Supplemental EIS ("SEIS") or,

---

[10]  Blue Mountains Biodiversity Project v. Blackwood, 161 F.3d 1208, 1212 (9th Cir. 1998) (citing 42 U.S.C. § 4332(2)(C)).

[11]  Id. (citing 40 C.F.R. § 1508.9).

[12]  Metcalf v. Daley, 214 F.3d 1135, 1143 (9th Cir. 2000) (citing 40 C.F.R. § 1508.9).

[13]  Id.

[14]  See Or. Natural Res. Council v. Devlin, 776 F. Supp. 1440, 1449 (D. Or. 1991)(citing Sierra Club v. Froehlke, 816 F.2d 205, 210 (5th Cir. 1987).

alternatively, issue a finding of No New Significant Impact ("FONNSI").

**C.  Judicial Review of Agency Action**

Judicial review of administrative actions under NEPA is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.[15] Under the APA, the Court must determine whether the agency action was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."[16] "The standard is narrow and the reviewing court may not substitute its judgment for that of the agency.[17] However, agency action is arbitrary and capricious if it fails to "articulate a rational connection between the facts found and the conclusion made."[18]

The Court should reverse an agency decision under the arbitrary and capricious standard only if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be

---

[15] Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 393-94 (1989); Earth Island Inst. v. United States Forest Serv., 351 F.3d 1291, 1300 (9th Cir. 2003).

[16] 5 U.S.C. 706(2)(A).

[17] Envtl. Def. Ctr. v. EPA, 344 F.3d 832, 858 n.36 (9th Cir. 2003).

[18] Id.

ORDER DENYING MOTION FOR
   PRELIMINARY INJUNCTION - 7
3:07-CV-0045-RRB

ascribed to a difference in view or the product of agency expertise."[19]

The decision not to supplement an EIS is "a classic example of a factual dispute the resolution of which implicates substantial agency expertise."[20] "An agency need not supplement an EIS every time new information comes to light after the EIS is finalized. To require otherwise would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made."[21] NEPA requires that the agency take a "hard look" at the new information to determine whether supplementation of the EIS is necessary.[22] However, where "a court reviews an agency action involving primarily issues of fact, and where analysis of the relevant documents requires a high level of technical expertise, [the court]

---

[19] Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv., 265 F.3d 1028, 1034 (9th Cir. 2001) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

[20] Headwaters, Inc. v. BLM, 914 F.2d 1174, 1177 (9th Cir. 1990) (citing Marsh v. Oregon Natural Res. Council, 490 U.S. 360 (1989)).

[21] Id. at 1176-77.

[22] Id.

ORDER DENYING MOTION FOR
   PRELIMINARY INJUNCTION - 8
3:07-CV-0045-RRB

must defer to the informed discretion of the responsible federal agencies."[23]

**IV. DISCUSSION**

Plaintiffs argue that Defendants' decision not to prepare an SEIS was arbitrary and capricious because the Lease Sale 202 EA noted new information and circumstances not addressed in the 2003 EIS, including higher oil prices, more leases than expected sold in the far/deepwater zones during Lease Sales 186 and 195, and the cumulative impact of climate change and increased industry interest in the Beaufort Sea on subsistence and polar bears, but that MMS failed to act thereon by preparing a SEIS.

Plaintiffs contend that if Lease Sale 202 is permitted to occur, Plaintiffs' subsistence activities will suffer irreparable harm from the effect of seismic testing on whales, seals, caribou, and waterfowl. Additionally, Plaintiffs assert that the cumulative impacts from seismic testing, exploratory activities, current offshore and onshore oil and gas development, and climate change combine to cause serious harm. According to Plaintiffs, the public interest in ensuring that federal agencies comply with federal environmental laws and avoid harm to sensitive marine ecosystems and habit overrides any possible economic harm that could result

---

[23] City of Sausalito v. O'Neill, 386 F.3d 1186, 1206 (2004) (citing, inter al., Marsh, 490 U.S. at 377-78).

ORDER DENYING MOTION FOR
   PRELIMINARY INJUNCTION - 9
3:07-CV-0045-RRB

from temporarily enjoining Lease Sale 202 for long enough to resolve the case on the merits.

Defendants assert that MMS was not required to prepare an SEIS because the 2003 EIS was based on generous development scenarios and the Lease Sale 202 EA did not present a seriously different picture of environmental impact from what was previously envisioned in the 2003 EIS, i.e., the impacts identified by Plaintiffs were not new.[24] Further, Defendants argue that any potential injury anticipated by Plaintiffs is speculative and would arise only, if at all, at the future exploration and development stages which are subject to additional regulatory control.[25] Finally, Defendants assert that the public interest would be harmed by enjoining the lease sale because expedited development of domestic oil and gas is an imperative national interest.

After considering all of the above the Court finds that the Motion for Preliminary Injunction must be denied. **The burden of proof is on Plaintiffs to demonstrate that they are entitled to a preliminary injunction.[26]** The Court cannot conclude, after reviewing the Lease Sale 202 EA in conjunction with the 2003 EIS, that the MMS's "Finding of No New Significant Impacts" ("FONNSI")

---

[24] Docket 19 at 35.

[25] Docket 19 at 24.

[26] <u>Mattel, Inc. v. Greiner and Hausser GMBH</u>, 354 F.3d 857, 869 (9th Cir. 2003).

was arbitrary and capricious nor can the Court conclude that MMS failed to take a "hard look" at the concerns raised by Plaintiffs prior to issuance of the FONNSI. Therefore, it is unlikely that Plaintiffs could prevail on the merits**, especially in light of NEPA's purpose to ensure that environmental considerations are taken into account, but not necessarily elevated over other appropriate considerations**.[27]

      Most of the concerns expressed by the Plaintiffs as to new or changed circumstances after the 2003 EIS was prepared were considered in the various scenarios included in the 2003 EIS. These were not new or unanticipated developments. Plaintiffs' concern about polar bears and associated mitigation was adequately addressed in the EA.[28] Moreover, with regard to the polar bears, Plaintiffs' concerns were aimed more at the exploration and development stage than the lease sale stage.

      Further, given the safeguards provided by the Outer Continental Shelf Leasing Act ("OCLSA"),[29] and the fact that notice must be provided pursuant to OCSLA regulations[30] and Incidental

---

[27]   <u>Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.</u>, 462 U.S. 87, 97 (1983)(internal citations omitted).

[28]   Proposed OCS Lease Sale 202 EA, pp. 4-6, 24-25, 55-64.

[29]   43 U.S.C. § 1340.

[30]   30 C.F.R. § 250.208.

ORDER DENYING MOTION FOR
   PRELIMINARY INJUNCTION - 11
3:07-CV-0045-RRB

Harassment Authorizations obtained pursuant to the Marine Mammal Protection Act[31] and supporting regulations[32] before seismic testing is conducted, it is unlikely that significant harm would result from the scheduled lease sale.

MMS appears sensitive to the concerns raised by Plaintiffs. Deference must be given to the experience and expertise of this agency especially in light of Supreme Court authority disfavoring injunctive relief at this early stage of the process.[33]

On whole, in spite of Plaintiffs' well-stated argument, the Court finds that a balance of hardships weighs in favor of Defendants who have invested significant time and expense in preparing for the scheduled sales. Moreover, the public interest in energy development favors proceeding with the scheduled sales. To conclude otherwise would require the Court to engage in multiple levels of speculation regarding climate change, animal migration, and economics.

///

///

///

---

[31] 16 U.S.C. § 1361, et seq.

[32] 50 C.F.R. 216.107(b).

[33] Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 544-46 (1987).

ORDER DENYING MOTION FOR
   PRELIMINARY INJUNCTION - 12
3:07-CV-0045-RRB

**V. CONCLUSION**

For the foregoing reason, Plaintiffs' Motion for Preliminary Injunction is **DENIED**. This matter shall proceed in due course.

ENTERED this 12th day of April, 2007.

> S/RALPH R. BEISTLINE
> UNITED STATES DISTRICT JUDGE