IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTH SLOPE BOROUGH and ALASKA ESKIMO WHALING COMMISSION,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>MINERALS MANAGEMENT SERVICE; REJANE 'JOHNNIE' BURTON, in her official capacity as Director, Minerals Management Service; UNITED STATES DEPARTMENT OF THE INTERIOR; and DIRK KEMPTHORNE, in his official capacity as Secretary, United States Department of the Interior,<br><br>　　　　Defendants. | Case No. 3:07-cv-0045-RRB<br><br><br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING ACTION** |

**I.　INTRODUCTION**

　　　　Before the Court are Plaintiffs North Slope Borough ("NSB") and the Alaska Eskimo Whaling Commission ("AEWC") (collectively "Plaintiffs") with a Motion for Summary Judgment and Injunctive Relief at Docket 49. Plaintiffs ask the Court to

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
　　AND DISMISSING ACTION - 1
3:07-CV-0045-RRB

rescind certain oil and gas leases issued by Defendant Minerals Management Services ("MMS") in 2007 which are located in the Beaufort Sea and referred to more specifically as Lease Sale 202. Plaintiffs also seek an injunction against issuance of similar leases until MMS prepares a new or supplemental Environmental Impact Statement ("EIS") pursuant to the National Environmental Policy Act ("NEPA").[1]

Defendants MMS, MMS Director Randall B. Luthi in his official capacity, U.S. Department of Interior ("DOI"), and DOI Secretary Dirk Kempthorne in his official capacity (collectively "Defendants"), oppose at Docket 55 and argue that supplementation of the existing 2003 EIS is unnecessary because no significant new information or circumstances relevant to Lease Sale 202 have been identified since preparation of the 2003 multi-sale EIS. Defendants ask that this case be dismissed.

## II. BACKGROUND

In 2003, MMS prepared a four-volume EIS to analyze the potential environmental impact of three proposed lease sales in the Beaufort Sea which were scheduled to occur in 2003 (Lease Sale 186), in 2005 (Lease Sale 195), and in 2007 (Lease Sale 202). Lease Sales 186 and 195 occurred as scheduled with 34 leases sold in 2003 and 117 leases sold in 2005. The leases available in 2007

---

[1] 42 U.S.C. § 4231 et seq.

were simply blocks that, for whatever reason, had not been sold in the two earlier sales.

Because of the time lag between the 2003 EIS and the later lease sales in 2005 and 2007, MMS planned to prepare an environmental assessment ("EA") for Lease Sales 195 and 202 to determine whether new information or circumstances arising since the 2003 EIS would require a Supplemental EIS. On October 28, 2005, MMS published a public notice of intent to prepare an EA for proposed Lease Sale 202.[2] Plaintiff AEWC submitted comments to MMS during the 30-day public comment period. The Lease Sale 202 EA was completed in August of 2006.

On September 6, 2006, MMS published a public notice announcing its decision, based on the Lease Sale 202 EA, to issue a Finding of No New Significant Impacts ("FONNSI") for proposed Lease Sale 202.[3] The notice provided a 30-day comment period. Plaintiffs AEWC and NSB submitted comments highlighting concerns about increased industry interest in the Beaufort Sea, the single-field development scenarios for Lease Sale 202, impacts from seismic testing, and potentially significant cumulative impacts from seismic testing and climate change on subsistence and polar

---

[2] 70 Fed. Reg. 62139 (Oct. 28, 2005).

[3] 71 Fed. Reg. 52574 (Sept. 6, 2006).

bears. Bidding was set to open on March 28, 2007. Subsequently, the date was rescheduled for April 18, 2007.

On March 29, 2007, Plaintiffs filed a Complaint seeking to overturn the MMS's decision not to supplement the 2003 EIS, arguing that it was arbitrary and capricious and violated NEPA.[4] On April 12, 2007, this Court denied Plaintiffs' Motion for Preliminary Injunction.[5] Thereafter, Lease Sale 202 was held. Plaintiffs now seek to have the sales in question rescinded and an injunction imposed against further sales until Defendants prepare a Supplemental EIS.

### III. LEGAL STANDARDS

**A.   Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[6] The moving party need not present evidence; it need only point out the

---

[4]   See Docket 1.

[5]   See Docket 25.

[6]   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

lack of any genuine dispute as to material fact.[7] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[9] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

**B. NEPA**

NEPA mandates the preparation of an EIS for any major federal action "significantly affecting the quality of the human environment."[11] The twin objectives of NEPA are to (1) require the federal agency to "consider every significant aspect of the environmental impact of a proposed action," and to (2) ensure that the agency "inform[s] the public that it has indeed considered

---

[7] Id. at 323-325.

[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

[9] Id. at 255.

[10] Id. at 248-49.

[11] 42 U.S.C. § 4332(C).

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
   AND DISMISSING ACTION - 5
3:07-CV-0045-RRB

environmental concerns in its decisionmaking process."[12] The agency, however, is not required to elevate environmental concerns over other appropriate considerations.[13]

A threshold question in a NEPA case, therefore, is whether a proposed project will "significantly affect" the environment and trigger the requirement for preparing an EIS.[14] An agency may prepare an environmental assessment ("EA") to determine whether the environmental impact of a proposed action is significant enough to warrant preparation of an EIS.[15] If the agency determines that an EIS is not necessary, it will issue a Finding of No Significant Impact ("FONSI").[16] "Because the very important decision whether to prepare an EIS is based solely on the EA, the EA is fundamental to the decision-making process."[17]

Where, as here, an agency has previously prepared an EIS, it may prepare an EA to determine whether new information or circumstances not originally accounted for in the EIS require

---

[12] Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 97 (1983)(internal citations omitted).

[13] Id.

[14] Blue Mountains Biodiversity Project v. Blackwood, 161 F.3d 1208, 1212 (9th Cir. 1998) (citing 42 U.S.C. § 4332(2)(C)).

[15] Id. (citing 40 C.F.R. § 1508.9).

[16] Metcalf v. Daley, 214 F.3d 1135, 1143 (9th Cir. 2000) (citing 40 C.F.R. § 1508.9).

[17] Id.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
    AND DISMISSING ACTION - 6
3:07-CV-0045-RRB

Case 3:07-cv-00045-RRB   Document 59   Filed 01/08/08   Page 6 of 13

preparation of an updated EIS. "The new circumstance must present a seriously different picture of the environmental impact of the proposed project from what was previously envisioned."[18] Based upon the EA, the agency may prepare a Supplemental EIS or, alternatively, conclude that there are no "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."[19] An agency need not "release and circulate a formal supplemental EIS, or a formal document explaining why the agency believes a supplemental EIS is unnecessary, every time some new information comes to light. Rather, a reasonableness standard governs."[20]

### C. Judicial Review of Agency Action

Judicial review of administrative actions under NEPA is governed by the Administrative Procedure Act ("APA").[21] Under the APA, the Court must determine whether the agency action was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."[22] An agency decision is arbitrary and

---

[18] See Or. Natural Res. Council v. Devlin, 776 F. Supp. 1440, 1449 (D. Or. 1991)(citing Sierra Club v. Froehlke, 816 F.2d 205, 210 (5th Cir. 1987)).

[19] 40 C.F.R. § 1502.9(c)(1).

[20] Friends of River v. Fed. Energy Regulatory Comm'n, 720 F.2d 93, 109 (D.C. Cir. 1983).

[21] 5 U.S.C. §§ 701-706.

[22] 5 U.S.C. § 706(2)(A).

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
   AND DISMISSING ACTION - 7
3:07-CV-0045-RRB

capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[23] However, "[t]he standard is narrow and the reviewing court may not substitute its judgment for that of the agency."[24]

The decision of whether to supplement an EIS is "a classic example of a factual dispute the resolution of which implicates substantial agency expertise."[25] NEPA requires that the agency take a "hard look" at the new information to determine whether supplementation of the EIS is necessary.[26] However, where "a court reviews an agency action involving primarily issues of fact, and where analysis of the relevant documents requires a high

---

[23] Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv., 265 F.3d 1028, 1034 (9th Cir. 2001) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

[24] Envtl. Def. Ctr. v. EPA, 344 F.3d 832, 858 n.36 (9th Cir. 2003) (citing Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989)).

[25] Headwaters, Inc. v. BLM, 914 F.2d 1174, 1177 (9th Cir. 1990) (citing Marsh, 490 U.S. at 394).

[26] Id.

level of technical expertise, [the court] must defer to the informed discretion of the responsible federal agencies."[27]

**IV. DISCUSSION**

Plaintiffs argue that new information and circumstances have arisen since he 2003 multi-sale EIS was released and that MMS's decision not to prepare a Supplemental EIS is arbitrary and capricious.[28] Plaintiffs urge the Court to invalidate Lease Sale 202 and require MMS to prepare a Supplemental EIS. Plaintiffs contend that if Lease Sale 202 is permitted to stand, Plaintiffs' subsistence activities will suffer irreparable harm from the cumulative impacts of seismic testing, exploratory activities, current offshore and onshore oil and gas development, and global climate change.

Defendants assert that MMS was not required to prepare a Supplemental EIS because the 2003 multi-sale EIS was based on generous development scenarios and the Lease Sale 202 EA did not present a seriously different picture of environmental impacts from what was previously envisioned in the 2003 EIS, i.e., the impacts identified by Plaintiffs were not new.

---

[27] City of Sausalito v. O'Neill, 386 F.3d 1186, 1206 (9th cir. 2004) (citing, inter al., Marsh, 490 U.S. at 377-78).

[28] Plaintiffs even go so far as to suggest subterfuge and fabrication on the part of Defendants, which the Court does not find to be the case.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
   AND DISMISSING ACTION - 9
3:07-CV-0045-RRB

It is worth noting that MMS exceeded the documentary requirements for determining whether to supplement the 2003 EIS.[29] MMS could have made this determination using much more informal documentation.[30] The Court will not hold MMS to a higher standard simply because it prepared an EA to access whether the 2003 EIS required supplementation.[31] Penalizing MMS for conducting a more-thorough-than-necessary review would discourage the use of an EA to determine whether to supplement an EIS – a result which Plaintiffs cannot seriously intend.

After reviewing the administrative record and the parties' respective briefs with accompanying exhibits, the Court cannot conclude that MMS failed to take a "hard look" at the concerns raised by Plaintiffs prior to concluding that preparation of a Supplemental EIS was not necessary. In the Lease Sale 202 EA,

---

[29] The parties are in agreement that MMS was not required to use the vehicle of an EA to determine whether a Supplemental EIS was in order. See Docket 55 at 8; Docket 57 at 24.

[30] See Marsh, 490 U.S. at 379; Price Road Neighborhood Ass'n v. U.S. Dept. of Transp., 113 F.3d 1505, 1510 (9th Cir. 1997); Friends of the Bow v. Thompson, 124 F.3d 1210, 1218-19 (9th Cir. 1997)).

[31] Plaintiffs' argument that MMS's conclusion is arbitrary because issuance of a "FONNSI" is not an available option under NEPA is unavailing. While the acronym "FONNSI" is not a codified term of art under NEPA, it is indistinguishable from the standard for determining whether to supplement an EIS: "Agencies: (1) Shall prepare supplements to either draft or final environmental impact statements if: . . . (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1).

MMS carefully reviewed the increase in oil prices, the zonal distribution of the leases, and the cumulative impacts of climate change on subsistence.  MMS concluded that this information did not present a seriously different picture of the environmental impact of Lease Sale 202 because the 2003 EIS was already based on generous development scenarios and because the rate and impact of climate change are largely independent of whether Lease Sale 202 is permitted to stand.

Nor can the Court conclude that MMS's "Finding of No New Significant Impacts" was arbitrary and capricious.  MMS provided adequate explanation for its conclusion that any new information about the impact on polar bears, fish, eiders, or bowhead whales, or from seismic testing and invasive species, was either not significant or had already considered in the 2003 EIS.  Deference must be given to the experience and expertise of this agency in light of the Supreme Court's instruction that the Court is not to substitute its own judgment for that of the agency.[32]

Congress has authorized the statutory framework and appropriate safeguards for the subject lease sales.  Given the safeguards provided by the Outer Continental Shelf Leasing Act ("OCSLA"),[33] and the fact that notice must be provided pursuant to

---

[32] Marsh, 490 U.S. at 378; Envtl. Def. Ctr. v. EPA, 344 F.3d 832, 858 n.36 (9th Cir. 2003).

[33] 43 U.S.C. § 1340.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
   AND DISMISSING ACTION - 11
3:07-CV-0045-RRB

OCLSA regulations[34] and Incidental Harassment Authorizations obtained pursuant to the Marina Mammal Protection Act[35] and supporting regulations[36] before seismic testing is conducted, it is unlikely that any significant impact beyond those identified in the 2003 EIS would result from development of the aforesaid leases. Moreover, the purpose of NEPA is to ensure that environmental considerations are taken into account, but not necessarily elevated over other appropriate considerations.[37] By asking this Court to overturn Lease Sale 202, Plaintiffs attempt to accomplish a result which should be obtained through legislative venues.

As the Court previously found, the balance of hardships weighs in favor of Defendants who have invested significant time and expense in preparing for the scheduled sales.[38] Moreover, the public interest in energy development favors upholding the scheduled sales. To conclude otherwise would require the Court to engage in multiple levels of speculation regarding climate change, animal migration, and economics, and to conclude that existing

---

[34] 30 C.F.R. § 250.208.

[35] 16 U.S.C. § 1361.

[36] 50 C.F.R. 216.107(b).

[37] <u>Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.</u>, 462 U.S. 87, 97 (1983).

[38] Docket 25 at 12.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
   AND DISMISSING ACTION - 12
3:07-CV-0045-RRB

federal regulations would not effectively address Plaintiffs' environmental concerns. This the Court cannot do.

**V. CONCLUSION**

For the foregoing reason, Plaintiffs' motion for summary judgment and injunctive relief is **DENIED**. Defendant's motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

ENTERED this 8th day of January, 2008.

                                  S/RALPH R. BEISTLINE
                                  UNITED STATES DISTRICT JUDGE